EILEEN J. O'CONNOR
Assistant Attorney General, Tax Division

RONALD A. CIMINO
Chief, Western Criminal Enforcement Section

CHARLES A. O'REILLY (CABAR160980)
BLAKE D. STAMM
Trial Attorneys
U.S. Department of Justice
Tax Division
600 E. Street, NW
Washington, DC 20001
Telephone: (202) 514-5247

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.   CR- 05-00171-1 JCS |
| Plaintiff, | ) | |
| v. | ) | SENTENCING MEMORANDUM |
| J. TONY SERRA, | ) | Date:   July 29, 2005 |
| Defendant. | ) | |

   The United States, by and through counsel, Eileen J. O'Connor, Assistant Attorney General, Tax Division, and Charles A. O'Reilly and Blake D. Stamm, Trial Attorneys, hereby submits the United States' Sentencing Memorandum in the above-entitled matter.

   The government recommends a period of substantial incarceration for Defendant in the above-captioned matter. Defendant's stipulated guideline range is from 10 to 16 months (See U.S.S.G. §§ 2T1.1.(a)(1) and 2T4.1.(I)). Based upon Defendant's chronic and willful disregard for the tax laws, the government believes that the sentence should include a minimum twelve month term of imprisonment and one year of supervised release.

   **1.     Defendant's Record: Three Convictions for Tax**

**Offenses and Twenty Years of Unpaid Taxes**

The government agrees with the majority of the factual findings contained in the Presentence Investigation Report dated July 15, 2005. The government opposes the probation officer's recommendation of a five-month term of imprisonment which is an overly lenient sentence for a chronic tax offender.

Defendant is an attorney with a criminal record for tax offenses. Prior to his guilty plea in the current matter, Defendant was twice convicted of tax violations:

- In 1974, Defendant was convicted at trial for failing to file his 1971 federal income tax return. His sentence included a four-month term of imprisonment.
- In 1986, Defendant pled guilty to failing to file his 1979 federal income tax return. The Court sentenced Defendant to one-year imprisonment, but suspended execution of that sentence and placed him on probation for five years.

On April 5 of this year, Defendant pled guilty to a two-count Information charging him with willfully failing to pay federal income taxes for the years 1998 and 1999. After two sentences of relative lenience, it is time to impose on Defendant, a significant period of incarceration.

For decades, the government and the Courts have attempted to obtain Defendant's compliance with the tax laws and Defendant has remained intransigent. His excuses for noncompliance have varied but his misconduct has been constant. At his criminal tax trial more than thirty years ago, Defendant cited his disapproval of the war in Vietnam as his reason for not paying his taxes. During his closing argument, he told the jury: "I'm not saying I didn't owe the money. I'm saying what I said, and what I said from the beginning to the end is that: You can't use tax money for an illegal war. And I'm not saying that I'm not willing to pay the tax. I am. The war is over; I'm willing." Transcript CR-74-120-ACW, August 30, 1974, 181-182:232. Defendant reneged on his assurances and simply refused to pay his taxes. His most current rationalizations are that he has a "dysfunctional relationship to money"[1] and has taken an

---

[1] Defendant had a sufficiently functional relationship to money to negotiate a deal for a movie based upon his life and to create a tax plan so that the proceeds would flow in trust to his

"informal vow of poverty." (Defendant's Sentencing Memorandum, pages 6-7.)   Thirty years after his first criminal conviction for tax offenses, Defendant persists in his violation of the Internal Revenue laws.  His entrenched misconduct with respect to the tax laws is well illustrated by the table below.

| Tax Year | Date Filed | Tax Due and Owing Per Tax Return | Tax, Int. & Penalties as of 05/16/2005 | Amount Written Off as Uncollectible | Payments as of 05/16/2005 |
|---|---|---|---|---|---|
| 1980 | July 1, 1982 | 9,198 | not applicable | 0 | 26,656 |
| 1981 | August 11, 1986 | 766 | not applicable | 0 | 1,519 |
| 1982 | August 11, 1986 | 11,597 | not applicable | 0 | 31,724 |
| 1983 | August 11, 1986 | 12,667 | not applicable | 21,991 | None |
| 1984 | August 11, 1986 | 16,973 | not applicable | 25,614 | None |
| 1985 | April 20, 1987 | 31,474 | not applicable | 45,743 | None |
| 1986 | June 6, 1988 | 35,162 | not applicable | 52,551 | None |
| 1987 | August 3, 1988 | 31,373 | not applicable | 34,913 | None |
| 1988 | October 17, 1989 | 38,040 | not applicable | 49,827 | None |
| 1989 | October 17, 1990 | 22,930 | not applicable | 27,371 | None |
| 1990 | June 20, 1991 | 21,384 | not applicable | 26,542 | None |
| 1991 | April 15, 1992 | 19,090 | not applicable | 20,831 | None |
| 1992 | May 27, 1993 | 24,679 | 28,257 | 0 | None |
| 1993 | October 11, 1994 | 25,807 | not applicable | 31,218 | None |
| 1994 | June 22, 1995 | 30,189 | 74,561 | 0 | None |
| 1995 | August 30, 1996 | 7,669 | 18,226 | 0 | None |
| 1996 | April 15, 1997 | 18,481 | 37,939 | 0 | None |
| 1997 | August 16, 1998 | 32,147 | 35,120 | 0 | None |
| 1998 | October 6, 1999 | 27,038 | 52,530 | 0 | None |
| 1999 | September 21, 2000 | 37,335 | 62,703 | 0 | None |
| 2000 | December 3, 2001 | 25,631 | 43,120 | 0 | None |
| 2001 | October 11, 2002 | 22,547 | 31,733 | 0 | None |
| 2002 | August 10, 2003 | 468 | 733 | 0 | None |
| 2003 | August 15, 2004 | 7,404 | 8,634 | 0 | None |

Thus, Defendant has paid nothing toward his federal income tax obligations for the years 1983 through 2003.  The taxes collected from Defendant were the result of liens imposed on

---

children. In 1985 Defendant earned $74,500 from the Columbia/Tristar Studios' film, True Believer. On August 24, 1987, to satisfy Defendant's tax obligations, the Internal Revenue Service placed a lien upon the monies to be paid to Defendant.  Defendant attempted to resist the levy by asserting that the funds were to be paid in trust for his children.

*Sentencing Memorandum*
*No. CR-05-00171-JSC*                             3

assets identified by the Internal Revenue Service. For the years 1980 through 2003, less than $60,000 has been collected and applied to Defendant's tax obligations, despite more than $500,000 in tax assessments made against Defendant during that same time period. As of May 16, 2005, the Internal Revenue Service had written off $336,600 as uncollectible corresponding to Defendant's tax obligations, interest and penalties for the years 1983 through 1993.

In his Sentencing Memorandum, Defendant obliquely footnotes his record of convictions for tax offenses and maintains he has learned his lesson. "The Court will be made aware that Mr. Serra previously failed to **file** tax returns, for which he was prosecuted and punished. He learned that lesson and has not repeated it." (Defendant's Sentencing Memorandum, page 6, fn. 5, emphasis in original.) Clearly, Defendant has not learned the key lesson that he has an obligation to obey the federal tax code in its entirety, not just those provisions he chooses. It is not a compelling argument in mitigation that Defendant has simply moved from one offense, willful failure to file tax returns, to another, willful failure to pay taxes. Rather, it reveals a singular unwillingness to follow the tax laws.

### 2. Defendant's Law Practice Does Not Entitle Him to Special Consideration or Leniency

Defendant argues, and the probation officer seems to agree, that his practice as a criminal defense and civil rights attorney merits some reduction in his sentence. He describes his legal work as a ". . . valiant fight to protect the interests of the accused . . ." and says he often funds cases that he does for free. (Defendant's Sentencing Memorandum, page 12.) The law does not provide Defendant, valiant or not, with a special tax exempt status because he claims to do better things with his income than pay his share of income taxes. Indeed, the courtrooms where he has built his practice and made his self-described ". . . extraordinary civic contribution that has forwarded the ends of justice in America" (Defendant's Sentencing Memorandum, page 12.) are funded by other peoples' tax money. Other individuals must pay more because Defendant pays nothing.

Defendant also argues, apparently without irony, that his practice ". . . demands that the system adhere to the constitutional principles and rules that protect people from the wrath of the state." (Defendant's Sentencing Memorandum, page 12.) By contrast Defendant's own

adherence to rules and laws is selective, incomplete and governed by a contemptuous disregard. Indeed, Defendant has been candid about his desire to stick a figurative finger in the eye of the Internal Revenue Service.  In his second tax prosecution, Defendant asserted in his Sentencing Memorandum: "Mr. Serra's attitude towards the Internal Revenue Service was originally grounded in the politics of the Vietnam War. After his conviction in 1974, he necessarily had to adjust his opinion. . . . In this context his failure to file his subsequent returns on time represents more of a grudging acquiescence to the Government's authority than any willful misconduct." 3:14-23.

### 3. Plea Agreement and Presentence Investigation Report Reflects Agreed Upon Tax Loss

Contrary to Defendant's assertion that "the agreed upon 'tax loss' for Guideline purposes, and thus the Level 12 determination, is a tax loss that does not factor in Mr. Serra's expenses," (Defendant's Sentencing Memorandum, page 9), the tax loss set forth in the plea agreement expressly does factor in Defendant's unreported expenses.  As laid out specifically in the plea agreement signed by Defendant, and affirmed under penalty of perjury before Magistrate Judge Spero on Tuesday, April 5, 2005, Defendant stated "For purposes of sentencing, the 'tax loss' as defined in the Guidelines includes all of taxes due from me and not paid identified in paragraphs 2(d) through 2(h) and that, based upon information now known to the government, this total tax loss is $97,964."  Plea Agreement, Paragraph 3.  Further, the Plea Agreement specifically allowed Defendant credit for unclaimed deductible expenses: "[o]n each of the income tax returns indicated above [tax returns filed for 1997 through 2001], I failed to report deductible expenses incurred by my Schedule C business that would have reduced the tax due and owing reported on the income tax returns I filed with the Internal Revenue Service to the amounts identified in subparagraphs d through h below."  Plea Agreement, Paragraph 2(c).

The Probation Officer correctly applied the $97,964 tax loss in computing a base offense level. (Presentence Investigation Report Paragraphs 7 and 14.)[2/]  The Presentence Investigation

---

[2/] The Presentence Investigation Report contains an inaccuracy that should have no effect on these proceedings. The Presentence Investigation Report incorrectly states that the Internal Revenue

Report also correctly notes that Defendant has paid nothing toward his federal income tax liabilities for the years 1983 through 2003, and that all federal income taxes collected from Defendant were the result of liens imposed upon Defendant's assets.

**4.      The Sentencing Recommendation Contained in the Presentence Investigation Report Is Unsupported By The Guidelines and the Sentencing Reform Act**

The Presentence Investigation Report correctly notes that the term of custody pursuant to the Sentencing Guidelines is ten to sixteen months. Nevertheless, without reference to the Sentencing Guidelines, the probation officer recommends a five-month period of custody. The Presentence Investigation Report provides the following justifications for this recommendation: (1) the probation officer received a flood of character letters from many members of the legal community attesting to the great character of the defendant; (2) the defendant's personal history reflects numerous awards and achievements related to his legal contributions and pro bono work; (3) the probation officer recognized the defendant's singular steadfastness to working as a legal advocate to the exclusion of all else. Presentence Investigation Report, Sentencing Recommendation, page 2.

If anything, Defendant's prominence in the legal community mitigates against leniency. As Defendant has articulated when representing clients seeking reparations against government officials for misconduct, the rule of law must apply to everyone. A sentence below the applicable guideline range for this defendant would send the signal that prominent attorneys get treated differently than others. The Sentencing Guidelines were promulgated in large part to avoid this type of disparate sentencing.

Notwithstanding Defendant's prominence and popularity within the legal community and his demonstrated willingness to take cases for little to no remuneration, the Sentencing Guidelines preclude these types of bases for departing from the recommended sentencing range. The Sentencing Guidelines address numerous specific offender characteristics that, depending upon

---

Service has determined the tax loss. See Page 4, Paragraph 7. In fact, the IRS has made no determination and the stipulated tax loss is limited to sentencing purposes and is based on information currently known to the government. Plea Agreement Paragraph 2(I).

*Sentencing Memorandum*
*No. CR-05-00171-JSC*                                             6

the characteristic, may or may not be relevant to whether a defendant should be sentenced outside the applicable guideline range.  Included among those specific offender characteristics the Sentencing Commission determined were factors "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range" are the following two categories: Age (U.S.S.G. §5H1.1.); and Military, Civic, Charitable or Public Service; Employment-Related Contributions; Record of Prior Good Works (U.S.S.G. §5H1.11.).  The Sentencing Commission specifically stated that neither age nor "prior good works" are ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.

Though the Sentencing Guidelines are no longer mandatory, the Court must take them into account in imposing a sentence.  <u>United States v. Ameline</u>, 400 F.3d 646, 655 (9th Cir. 2005). Moreover, the Court must fashion a sentence which serves the objectives of the Sentencing Reform Act:

- To reflect the seriousness of the offense;
- To promote respect for the law;
- To afford adequate deterrence.  See 18 U.S.C. 3553(a)(1)-(2).

The minimal prison term the Probation Officer recommends  for this chronic and disdainful tax offender – one month greater than the four month sentence he received for his first tax offense in 1974--would clearly not achieve these purposes of the Act.  The meager prison term would discount the seriousness of this tax crime, Defendant's third.  A five-month term of imprisonment would ignore Defendant's many years of blatant disrespect for the tax law and his purposeful default on his obligation to pay his taxes.   Nobody would be deterred from similar conduct.[3/]

---

[3/]Noting that this prosecution has already received attention in local newspapers, Defendant says: "...(I)t can be categorically stated that the publicity of this prosecution has already achieved the potential for deterrence.  The government is reaping the publicity benefit of this case already.  Mr. Serra is accepting responsibility for his failure in this case and acknowledges the government's right to collect taxes from him."  Defendant's Sentencing Memorandum, page 13, (footnote omitted). Conversely, in his public statements about his offense, Defendant blames the government for his

### 5. Defendant's Criminal History Category Underrepresents the Seriousness of Defendant's Past Criminal Conduct

As noted in the Presentence Investigation Report, Pursuant to U.S.S.G. §4A1.3, Defendant's criminal history category may underrepresent the seriousness of defendant's past criminal conduct. "If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the applicable guideline range. Such history may include, but is not limited to, information concerning:

Defendant's history is that of a chronic violator of the federal income tax laws. In 1974, Defendant was convicted of failing to file his 1971 federal income tax return. In 1986, Defendant

---

circumstances so as to belie his purported acceptance of responsibility and to detract from deterrence. For instance:

> "Serra thinks feds applying different standard to him . . . Serra said the latest charges come all the way from the top–from former Attorney General John Ashcroft–and he said he's being treated more harshly than other tax avoiders." Bar Talk, April 11, 2005;

> "I'm being victimized." The Mercury News, April 5, 2005;

> "He told reporters outside of court that he considers the prosecuting 'wholly political'." Associated Press, April 6, 2005, SFGate, April 6, 2005, KESQ News; Monterey Herald.com. April 6, 2005.

Defendant's protestations in the media that he is the victim of a politically motivated prosecution should affect the Court's determination that he has accepted responsibility and that his plea will serve a deterrence value.

*Sentencing Memorandum*
*No. CR-05-00171-JSC*                                8

pleaded guilty to failing to file his 1979 federal income tax return.  Further, as noted above, Defendant has willfully refused to comply with the tax laws for more than twenty years.  The government does not argue that the Court should depart from the otherwise applicable guideline range based upon Defendant's criminal history.  Rather, the government maintains that such prolonged willful disregard for Defendant's legal obligations should preclude any downward departure from the applicable guideline range.

**6.     Recommendation**

As was stated in the United States Sentencing Memorandum filed January 21, 1986, "[i]t is of course obvious that the defendant should be treated no differently than any other citizen, merely because he is a criminal defense lawyer."  The United States' recommendations for sentencing are based upon the fundamental premise underlying our system of justice: equal justice for all.

Consistent with the Federal Sentencing Guidelines and Defendant's plea agreement, Defendant should be imprisoned for a term of twelve months, which is within the applicable guideline range of ten to sixteen months, and be ordered to pay immediate restitution of $100,000 towards his federal income tax liabilities.  Following imprisonment, Defendant should be placed on a term of supervised release of one year, and, in addition to the standard terms of release, the Court should require Defendant to cooperate fully with the Internal Revenue Service in the assessment and collection of his federal income tax obligations for the years for which there remains a tax due and owing, including providing accurate and complete financial information, submitting sworn statements and giving depositions under oath concerning Defendant's assets and ability to pay.

Respectfully submitted,

Eileen J. O'Connor
Assistant Attorney General, Tax Division

/s/

_____
CHARLES A. O'REILLY
BLAKE D. STAMM
Trial Attorneys

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is: Office of the United States Attorney, 450 Golden Gate Avenue, 10th floor, San Francisco, California 94102.  I further certify that on July 22, 2005, I caused the within document(s):

**SENTENCING MEMORANDUM**

to be served this date on the parties in this action, **via U.S. Post.**

Randolph Elliott Daar
Pier 5 Law Offices
506 Broadway
San Francisco, CA 94133

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 22, 2005

/s/
_____
STEFANIA M. CHIN
Legal Assistant